IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12 C 233 |
| MASONRY COMPANY, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on arbitrators Alan Esche's (Esche) and Richard Lauber's (Lauber) (collectively referred to as "Arbitrators") motion to quash subpoenas for deposition and document production. For the reasons stated below, the instant motion to quash is granted.

## BACKGROUND

Plaintiff Administrative District Counsel 1 of Illinois of the International

Union of Bricklayers and Allied Craftworkers, AFL-CIO (Union) contends that in May 2009, Defendant Masonry Company, Inc. (Masonry) entered into a collective bargaining agreement (CBA) with the Union. Masonry allegedly violated a wage provision in the CBA and the parties proceeded to arbitration. A Joint Arbitration Board (JAB) issued an award (Arbitration Award), ruling for the Union. Esche and Lauber were members of the JAB. The Union brought the instant action to compel Masonry to comply with the Arbitration Award. Masonry then filed a motion to vacate the Arbitration Award, which essentially constituted a counterclaim in this action. Masonry asserts that the Arbitration Award should be vacated on the basis that Esche and Lauber were not impartial members on the JAB. During discovery, Masonry issued subpoenas (Subpoenas) to Esche and Lauber to appear for a deposition and to produce documents. Esche and Lauber now move to quash the Subpoenas.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 45(c)(3) (Rule 45(c)(3)), a non-party who is the subject of a subpoena may file a motion to quash the subpoena. Fed. R. Civ. P. 45(c)(3). Rule 45(c)(3) provides the following:

> (A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

*Id.* (emphasis in original). In addition, pursuant to Federal Rule of Civil Procedure 26(b)(2)(C), a court can limit discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

## DISCUSSION

The Arbitrators argue that they should not be subject to discovery in this supplemental litigation. Courts in this district have followed the general principal that "a party may not depose an arbitrator in order to inquire into the basis, reasoning

3

or thought processes that led to the decision." *T. McGann Plumbing, Inc. v. Chicago Journeymen Plumbers' Local 130, U.A.*, 522 F.Supp.2d 1009, 1014 (N.D. Ill. 2007). Courts in this district have not, however, made a blanket prohibition against deposing arbitrators, and have allowed a party to "depose an arbitrator who possesses directly relevant and probative evidence concerning the issue on which the party bases its challenge, so long as the testimony elicited from the arbitrator does not question the correctness of his decision." *Id.*

In determining whether the Subpoenas should be quashed, this court must first take into consideration the strong federal policy favoring arbitration. The Seventh Circuit has recognized that there is a "federal policy favoring arbitrability" when disputants have agreed to arbitrate a dispute.[1] *Karl Schmidt Unisia, Inc. v. International Union, United Auto., Aerospace, and Agr. Implement Workers of America, UAW Local, 2357*, 628 F.3d 909, 913 (7th Cir. 2010). In addition, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012)(internal quotations omitted)(quoting *AT&T Mobility LLC v. Concepcion*, 131

---

[1] Arbitration has been a method of resolving disputes since ancient times. For example, historical records from ancient Greece attest to the fact that arbitration was employed in the ancient Greek world to resolve disputes. http://en.wikipedia.org/wiki/Ancient_greek_law (visited May 10, 2012). In addition, in Book 18 of the Iliad, Homer states "αμφω δ ιεσθην επι ιστορι πειραρ ελεσθαι," which has been interpreted to refer to an instance when two disputants agreed to have their dispute resolved in arbitration. An ιστωρ was a "referee" or "daysman," in other words, a neutral party that the parties would consent to have resolve their dispute.

S.Ct. 1740, 1745 (2011)). In furtherance of the federal policy favoring arbitration, the Seventh Circuit has broadly construed arbitration clauses, presuming that the parties have agreed to arbitrate disputes, and has extremely limited the scope of judicial review of arbitrators' decisions. *See, e.g., Prate Installations, Inc. v. Chicago Regional Council of Carpenters*, 607 F.3d 467, 470 (7th Cir. 2010)(stating that "[j]udicial review of arbitration awards is extremely limited, and the merits of the arbitrator's decision will not be reviewed"); *United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Service Workers Intern. Union v. TriMas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008)(stating that "[w]here the arbitration clause is broad, there is a presumption in favor of arbitrability" and that "[a]ny 'ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration'")(quoting in part *Volt Info. Sci., Inc. v. Board of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

In keeping with the federal policy favoring arbitration, the courts must limit the ability of the losing party in arbitration to challenge the arbitration ruling in supplemental litigation. As the Supreme Court has recognized, arbitration provides an economical and streamlined process by which parties can resolve their dispute. *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 479-80 (1989)(referencing the "legislative policy embodied in the Arbitration Act, . . . which

5

strongly favors the enforcement of agreements to arbitrate as a means of securing prompt, economical and adequate solution of controversies")(internal quotations omitted); *Republic of Kazakhstan v. Biedermann Intern.*, 168 F.3d 880, 883 (5th Cir. 1999)(stating that "[a]rbitration is intended as a speedy, economical, and effective means of dispute resolution"); *Texaco Exploration and Production Co. v. AmClyde Engineered Products Co., Inc.*, 243 F.3d 906, 910 (5th Cir. 2001)(stating that "[a]s a tangential benefit, however, arbitration usually provides a speedier, more economical form of dispute resolution").

If the losing party in arbitration is able to compel the arbitrators to submit to discovery in supplemental litigation, the delay and costs associated would undermine the streamlined and economical nature of the arbitration process. Other courts have recognized the potential devaluation of the arbitration process by allowing such discovery. For example, in *In re National Risk Underwriters, Inc.*, 1989 WL 100649 (4th Cir. 1989), the Fourth Circuit stated "that to permit this kind of searching inquiry into the arbitral decision-making process would work an erosion of the integrity of that process as well as inject an impermissible degree of judicial supervision into arbitration proceedings." *Id.* at *4. The court in *National Risk Underwriters, Inc.* further stated that "it would defeat the whole purpose of arbitration as a faster and cheaper forum for dispute resolution if the courts were

6

forced to step in and order the depositions of arbitrators whenever a party is displeased with a decision." *Id.* at *4. Similarly, in *Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988 (9th Cir. 1995), the Ninth Circuit recognized that an "arbitration's purpose-to be an expeditious and economical dispute resolution process-would be frustrated by open-ended judicial inquiries into relative expertise versus relative impartiality." *Id.* at 993. In *Republic of Kazakhstan v. Biedermann Intern.*, 168 F.3d 880 (5th Cir. 1999), the Fifth Circuit also recognized that "[a]rbitration is intended as a speedy, economical, and effective means of dispute resolution." *Id.* at 883. The court in *Biedermann* further stated that "arbitration's principal advantages may be destroyed if the parties succumb to fighting over burdensome discovery requests far from the place of arbitration." *Id.* at 883. Thus, consistent with the federal policy favoring arbitration, the ability of a losing party in arbitration to subject an arbitrator to discovery concerning partiality must be extremely limited.

On the other hand, a losing party in an arbitration that has a legitimate basis in fact, and is not merely speculating, is not barred from raising the issue of partiality in court, regardless of whether the arbitration process includes certain mechanisms to ensure impartiality. Underlying the federal policy favoring resolution in arbitration is the principle that parties in arbitration have contractually agreed to have their

dispute resolved by an alternate resolution method. *See Gore*, 666 F.3d at 1032 (stating that "because arbitration is a matter of contract, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit'")(quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). A party would not normally consent to have a dispute resolved by an arbitrator that the party knew would act partially toward the other side. Thus, if it turns out that a party in arbitration unwittingly submitted himself to an arbitrator who did not act as a neutral arbiter, there should be some limited means to seek judicial review regarding the partiality of that arbitrator.

In order for a losing party in arbitration to compel an arbitrator to submit to discovery concerning his partiality, the losing party in arbitration must first satisfy a threshold requirement. The losing party in arbitration in the first instance must provide more than a conclusory statement as to partiality. The losing party must offer factual allegations as to impartiality on the part of the arbitrator. The mere fact that there are circumstances that suggest the possibility that an arbitrator might have been partial to the prevailing party, or that there is an allegation of an appearance of partiality, is not sufficient to meet the threshold burden. The losing party in arbitration must show that partiality is more than just possible or plausible by pointing to sufficient concrete evidence that would enable a reasonable person to

conclude that there is a legitimate question as to the partiality of the arbitrator. If the threshold requirement is met, the court then will evaluate other factors in determining whether to compel the arbitrators to submit to discovery.

In this case, Masonry contends that the Arbitrators are executives of two of Masonry's direct competitors. However, as discussed above, the mere appearance of partiality is not alone sufficient to justify the discovery sought by Masonry. In fact, courts have recognized that in order to have arbitrators familiar with the technical matters relevant to arbitration, it may not be feasible to always have arbitrators that lack the appearance of partiality. *See, e.g., Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir. 1992)(noting, in deciding whether to set aside an award based on partiality, that "[a]s arbitrators are usually knowledgeable individuals in a given field, often they have interests and relationships that overlap with the matter they are considering as arbitrators" and "[t]he mere appearance of bias that might disqualify a judge will not disqualify an arbitrator")(internal quotation omitted)(quoting *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 173 (2nd Cir. 1984)); *Arizona Elec. Power Co-op., Inc.*, 59 F.3d at 993 (stating that "parties agree to arbitrate precisely because they prefer a tribunal with expertise regarding the particular subject matter of their dispute," and that "[f]amiliarity with a discipline often comes at the expense of complete impartiality"). Masonry consented to have

9

its dispute with the Union resolved in arbitration, and, as the Seventh Circuit has stated, "[t]he parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 679 (7th Cir. 1983). Masonry has not shown that the Arbitrators concealed their connections with competitors of Masonry at any time, or in such a manner that impacted their partiality. Nor has Masonry provided any concrete evidence showing that the Arbitrators made their decision based on personal interests. Masonry asserts that the employers of the Arbitrators may derive certain indirect benefits as a result of the Arbitration Award. Masonry also contends that it is even conceivable that Masonry may not be able to satisfy the damages owed pursuant to the Arbitration Award and that Masonry will ultimately be forced out of business. However, speculation on the part of Masonry that the employers of the Arbitrators may indirectly benefit from the results of the Arbitration Award is not a sufficient basis to warrant subjecting the Arbitrators to discovery in this matter. Further, the fact that Masonry may not be able to pay the Arbitration Award is not relevant to the issue before the court. Masonry agreed to have its dispute resolved in arbitration, and cannot now engage in a fishing expedition in an attempt to undermine the validity of the Arbitration Award or to thwart the arbitration process. Based on the above, and in accordance with the federal policy of

promoting arbitration as an efficient alternative resolution method, the instant motion to quash is granted.

## CONCLUSION

Based on the foregoing analysis, the instant motion to quash is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 18, 2012