IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADMINISTRATIVE DISTRICT COUNCIL 1 OF ILLINOIS OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, AFL-CIO, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12 C 233 |
| MASONRY COMPANY, INC., | ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Administrative District Council of Illinois of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO's (Union) motion for summary judgment. This matter is also before the court on Defendant Masonry Company, Inc.'s (Masonry) motion for summary judgment. For the reasons stated below, Union's motion for summary judgment is granted and Masonry's motion for summary judgment is denied.

**BACKGROUND**

Union contends that in May 2009, Masonry entered into a collective bargaining agreement (CBA) with Union. Masonry allegedly participated in a kickback scheme in which bricklayers were required to pay a kickback to supervisors in order to keep their jobs. Union contends that the kickback scheme violated a wage provision in the CBA. Masonry refused to pay the amounts sought by Union under the CBA and the parties proceeded to arbitration to resolve the dispute. A Joint Arbitration Board (JAB) issued an award (Arbitration Award), ruling for Union. Union brought the instant action to compel Masonry to comply with the Arbitration Award. Masonry then filed a motion to vacate the Arbitration Award, which essentially constituted a counterclaim in this action. Union now moves for summary judgment on its claim to enforce the Arbitration Award. Masonry also moves for summary judgment to vacate the Arbitration Award in full or in part, or to remand this matter to the JAB for further proceedings.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

It is undisputed: (1) that Union and Masonry are parties to the CBA, (2) that the CBA provides for the resolution of disputes before the JAB, and (3) that JAB issued an award in favor of Union. (R USF Par. 4-7, 12-13). Union argues that this court should enforce the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the federal policy favoring the enforcement of arbitration awards. The Seventh Circuit has recognized that there is a "federal policy favoring arbitrability" when disputants have agreed to arbitrate a dispute. *Karl Schmidt Unisia, Inc. v. International Union, United Auto., Aerospace, and Agr. Implement*

3

*Workers of America, UAW Local, 2357*, 628 F.3d 909, 913 (7th Cir. 2010). In addition, the Federal Arbitration Act "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012)(internal quotations omitted)(quoting *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011)). In furtherance of the federal policy favoring arbitration, the Seventh Circuit has broadly construed arbitration clauses, presuming that the parties have agreed to arbitrate disputes, and has extremely limited the scope of judicial review of arbitrators' decisions. *See, e.g., Prate Installations, Inc. v. Chicago Regional Council of Carpenters*, 607 F.3d 467, 470 (7th Cir. 2010)(stating that "[j]udicial review of arbitration awards is extremely limited, and the merits of the arbitrator's decision will not be reviewed"); *United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Service Workers Intern. Union v. TriMas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008)(stating that "[w]here the arbitration clause is broad, there is a presumption in favor of arbitrability," and that "[a]ny 'ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration'")(quoting in part *Volt Info. Sci., Inc. v. Board of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

The Seventh Circuit has also made clear that "only if the arbitrator's decision fails to draw[ ] its essence from the collective bargaining agreement will a court refuse to enforce that decision." *Carpenter Local No. 1027, Mill Cabinet-Industrial Div. v. Lee Lumber and Bldg. Material Corp.*, 2 F.3d 796, 797 (7th Cir.

4

1993)(internal quotations omitted)(quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960))(stating, in addition, that "[a]n arbitration award draws its essence from the contract so long as that award is based on the arbitrator's interpretation of the contract-even if the court is convinced that interpretation is unsound or based on a factual or legal error"). In addition, the Seventh Circuit has created a limited exception to reverse an arbitration award when "the arbitrator deliberately disregards what he knows to be the law." *Eljer Mfg., Inc. v. Kowin Development Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994)(stating that "[e]rrors in the arbitrator's interpretation of law or findings of fact do not merit reversal under this standard"). In the instant action, Masonry argues that the court should decline to enforce the Arbitration Award and should vacate the Arbitration Award, contending: (1) that the Arbitration Award did not draw its essence from the CBA and that the JAB exceeded its authority, and (2) that the Arbitration Award is unlawful.

I.  Authority of JAB under CBA

Masonry argues that the Arbitration Award did not draw its essence from the CBA and that the JAB acted outside the scope of its authority: (1) by considering conduct that occurred prior to the effective date of the CBA, (2) by awarding relief for grievances that were untimely filed, and (3) by relying on public policy considerations. An arbitration award is deemed to draw its essence from a contract "as long as it is derived from the agreement, viewed in light of its language, its

5

context, and any other indicia of the parties' intention. . . ." *Johnson Controls, Inc. Systems & Srvs. Div. v. United Ass'n. of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the U.S.A. and Canada, AFL-CIO*, 39 F.3d 821, 825 (7th Cir. 1994)(internal quotations omitted)(quoting *Amoco Oil Co. v. Oil, Chem. & Atomic Workers Int'l Union, Local 7-1, Inc.*, 548 F.2d 1288, 1294 (7th Cir. 1977)). To the extent that there is any ambiguity as to whether an arbitration award derives its essence from a contract, a court should "resolve any reasonable doubt about whether an award draws its essence from the collective bargaining agreement in favor of enforcing the award." *Polk Bros., Inc. v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent)*, 973 F.2d 593, 597 (7th Cir. 1992); *see also Sullivan v. Lemoncello*, 36 F.3d 676, 682-83 (7th Cir. 1994)(stating that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority a court cannot overturn an arbitration award").

### A. Conduct that Occurred Prior to Effective Date of CBA

Masonry argues that the JAB lacked authority under the CBA to consider conduct that occurred prior to the effective date of the CBA. It is undisputed that the CBA became effective May 29, 2009. (R MSF Par. 7). It is also undisputed that at least part of the calculation of the damages award by the JAB was based upon the hours worked in 2008 and 2009. (R MSF Par. 35). The court notes that Masonry does not contend that the JAB relied upon any conduct prior to the CBA to determine whether the CBA had been violated. The JAB merely relied, in part, upon certain

conduct prior to the CBA to calculate an appropriate damages amount. An arbitrator's remedies that extend beyond the effective dates of a CBA are "not necessarily impermissible." *Prate Installations, Inc.*, 607 F.3d at 471 (citing *National Postal Mail Handlers Union v. American Postal Workers Union*, 589 F.3d 437, 442, 389 (D.C. Cir. 2009)). An arbitrator can, for example, extend a remedy outside the effective dates of the CBA under the common law continuing violations doctrine. *National Postal Mail Handlers*, 589 F.3d at 442-43.

In the instant action, it is apparent that the JAB, in fashioning a remedy, deemed the violation of the CBA to be a continuing violation when it considered conduct that occurred prior to the effective date of the CBA. *See id.* at 442-44 (finding that an arbitrator "was arguably construing or applying the contract" by relying on a continuing violations theory to award damages for alleged conduct that occurred prior to the effective date of the agreement). The JAB stated in the Arbitration Award, for example, that the kickback scheme had "probably been going on in one form or another for many years." (AA 1). The JAB also indicated that the most difficult part of its decision was deciding "how long a time period was involved," but that it was convinced the scheme had been going on throughout 2010 and 2011. (AA 2). The JAB further indicated that Masonry "may have been requiring kickbacks for at least 10 years." (AA 2).

The ability of an arbitrator to employ the continuing violations doctrine is particularly applicable when the arbitrator is provided with broad authority by the parties under the CBA, such as in the instant action. The CBA provides the JAB

7

with broad authority to fashion a remedy for violations. (CBA 10.7). Section 10.7 of the CBA states, in pertinent part: "The JAB . . . shall have full power to enforce this Agreement and may impose such awards, orders, damages, lost wage damages, fines, sanctions, and other remedies as the JAB or arbitrator deem appropriate." (CBA 10.7). The JAB thus had "full power" under the CBA to impose an appropriate remedy. Nothing in the CBA precluded the JAB from considering conduct that occurred prior to the effective date of the CBA when determining an appropriate remedy. The Seventh Circuit has emphasized that "arbitrators must have flexibility to determine remedies, and the authority to interpret and find a breach of the agreement implies the authority to prescribe a remedy to cure the breach." *Prate Installations, Inc.*, 607 F.3d at 471 (internal quotations omitted)(quoting in part *Dexter Axle Co. v. Int'l Assoc. of Mach. & Aerospace Workers,* 418 F.3d 762, 768-69 (7th Cir. 2005)).

Masonry argues that it was not on notice that Union was pursuing a grievance based on alleged continuing violations that extended back prior to the effective date of the CBA. However, the continuing violation issue clearly became relevant based upon the evidence introduced at the arbitration proceedings, and Masonry should have been aware that the doctrine could have been applied by the JAB. Also, even if Masonry did not understand that the JAB was considering continuing violations, the CBA did not require Union to give such notice. (CBA 10.1). Therefore, the record does not reflect that the JAB was acting outside the authority given to it under the CBA when it considered conduct that occurred prior to the effective date of the CBA

in fashioning a remedy.

### B. Relief for Grievances that were Untimely Filed

Masonry argues that the JAB lacked authority under the CBA to award relief for grievances that Masonry contends were not filed in a timely fashion. The CBA provides a 90-day limitation period for awarding relief for grievances. (CBA 10.1). According to the testimony of a single bricklayer, Dariusz Glab (Glab), the first kickback payment that Glab made was in March, 2011. However, Glab did not file his grievance (Grievance) until September 22, 2011. The Seventh Circuit has indicated that the timeliness of an alleged grievance is "an issue of procedural arbitrability . . . reserved for the arbitrator." *Beer, Soft Drink, etc., Local Union No. 744 v. Metropolitan Distributors, Inc.*, 763 F.2d 300 (7th Cir. 1985). Masonry did not challenge the arbitrability of the dispute before the JAB when the arbitration proceedings began. Nor did Masonry challenge the timeliness of the Grievance when it was submitted to the JAB. The parties to the CBA provided the JAB full power to decide issues of procedural arbitrability, including the issue of the timeliness of grievances. There is no express language in the CBA that foreclosed the JAB from exercising its discretion to address grievances outside the 90-day window. The court also notes that the Grievance could have been deemed timely based on the continuing violation doctrine. *See, e.g., Interstate Brands Corp. v. Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135*, 909 F.2d 885, 891 (6th Cir. 1990)(stating that an arbitrator was construing terms of an

9

agreement by finding that an employee suspension was a "continuing act" that could be pursued at any time); *see also McCabe Hamilton & Renny Co., Ltd. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO*, 557 F. Supp. 2d 1171, 1181 (D. Haw. 2008)(holding that the "[a]rbitrator clearly interpreted the CBAs by noting the existence of a continuing violation, which would not be time-barred under the CBAs"). Therefore, the JAB did not exceed its authority when it awarded relief for the Grievance that occurred outside the 90-day limitation period set forth in the CBA.

C. Public Policy Considerations

Masonry argues that the JAB lacked authority under the CBA to rely on public policy considerations. Masonry contends that the JAB was attempting to "avenge the rights of the legitimate contractors in the industry to obtain work and stay in business and to redress the substantial harm suffered by the industry as a whole," and therefore, the JAB went outside the express provisions of the CBA. (M Reply 10). An arbitrator must limit his "interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *Young Radiator Co. v. Int'l Union, etc.*, 734 F.2d 321, 323 (7th Cir. 1984)(internal quotations omitted)(quoting *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960)); *see also Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 184-85 (7th Cir. 1985)(stating that "[i]t is only when the arbitrator must have based his award on some body of thought,

10

or feeling, or policy, or law that is outside the contract . . . that the award can be said not to draw its essence from the collective bargaining agreement").

The JAB noted in the Arbitration Award that "a scheme like this does not just cheat the individual bricklayers, but it undermines the entire industry." (AA 2). The JAB also explained the impact of a kickback scheme on industry pricing, contributions to benefit trust funds, and the ability of legitimate bricklayers to obtain work. (AA 2). However, the JAB also specifically stated that it attempted "to set the damage figures in a proper way based on the terms of the contract. . . ." (AA 2). It is apparent from the record that the JAB rendered its decision based upon the terms of the CBA, and the mere fact that the JAB referenced certain public policy considerations in the Arbitration Award does not show that the JAB exceeded its authority under the CBA. To the extent that Masonry could show any ambiguity relating to the basis of the Arbitration Award from the language used by the JAB, that is not sufficient to vacate the award. *See Polk Bros., Inc*, 973 F.2d at 597 (stating that a court should "resolve any reasonable doubt about whether an award draws its essence from the collective bargaining agreement in favor of enforcing the award"); *Young Radiator Co.*, 734 F.2d at 325 (indicating that a court should not refuse to enforce an award on the basis of a "mere ambiguity in the opinion accompanying an award"); *see also Chicago Typographical Union No. 16, v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991)(stating that subjecting "arbitrators' opinions to beady-eyed scrutiny . . . might discourage them from writing opinions at all," and that a court "should not create disincentives to their doing so").

11

In addition, as stated above, the express provisions of the CBA provided the JAB with "full power" to issue an appropriate remedy, including but not limited to "other remedies as the JAB or arbitrator deem appropriate," which would have allowed the JAB to take note of public policy considerations. (CBA 10.7). Therefore, the JAB did not exceed its authority by discussing public policy considerations when making its decision.

II. Lawfulness of the Arbitration Award

Masonry argues that the Arbitration Award should be vacated because it requires illegal payments in violation of 29 U.S.C. § 186 (Section 186). As indicated above, an arbitration award may be vacated if "the arbitrator deliberately disregards what he knows to be the law." *Eljer Mfg., Inc.*, 14 F.3d at 1254. Section 186 generally prohibits employers from making payments to "employees, representatives, or labor organizations," unless the payments fall in one of the exceptions under Section 186(c). 29 U.S.C. § 186(a). Masonry argues that the Arbitration Award is unlawful because it does not satisfy all of the exceptions set forth in Section 186(c). However, as Union correctly points out, Section 186(c) provides a list of exceptions and clearly indicates that they are listed in the alternative with the word "or." *Id.* In the instant action, the Arbitration Award satisfies one of the exceptions in Section 186(c). Section 186(c) permits the payment "of any money or other thing of value in satisfaction of . . . a decision or award of an arbitrator. . . ." *Id.* Therefore, Masonry has not shown that the Arbitration Award requires illegal payments in violation of

12

Section 186 or that the JAB ignored the law in making its decision.

Based on the above, the undisputed facts show that Union and Masonry agreed to have disputes relating to the CBA resolved by the JAB, and that the JAB heard evidence and made a decision in Union's favor. The record reflects that the JAB did not exceed its authority in making its decision and that the JAB award is not unlawful. Masonry agreed to have the JAB resolve its dispute and Masonry cannot ask this court to rehear its dispute after the JAB ruled against Masonry. To allow courts to second-guess arbitrators' decisions would undermine the economical efficiency that arbitration offers. *See, e.g., Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 479-80 (1989)(referencing the "legislative policy embodied in the Arbitration Act, . . . which strongly favors the enforcement of agreements to arbitrate as a means of securing prompt, economical and adequate solution of controversies")(internal quotations omitted); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999)(stating that "[a]rbitration is intended as a speedy, economical, and effective means of dispute resolution"); *Texaco Exploration and Production Co. v. AmClyde Engineered Products Co., Inc.*, 243 F.3d 906, 910 (5th Cir. 2001)(stating that "[a]s a tangential benefit, however, arbitration usually provides a speedier, more economical form of dispute resolution"). Therefore, Union's motion for summary judgment is granted and Masonry's motion for summary judgment is denied.

## CONCLUSION

Based on the foregoing analysis, Union's motion for summary judgment is granted and Masonry's motion for summary judgment is denied.


_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   October 25, 2012